# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD P. BROBST, | : CIVIL NO: 3:15-CV-01468 |
| Plaintiff, | : |
| | : (Judge Mariani) |
| v. | : |
| | : (Magistrate Judge Schwab) |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

### I.   Introduction.

The plaintiff, Howard P. Brobst ("Brobst"), proceeding *pro se*, commenced this lawsuit by filing a complaint, alleging that the disposition of his bankruptcy proceeding in the 1990s had been procured by fraud. *Doc. 1* at 3. Brobst further alleges that the presiding Bankruptcy Judge and other agents of the Federal judiciary and executive departments perpetuated the fraud. *Doc. 1* at 4. The defendant United States of America ("United States") filed a motion to dismiss. *Doc. 9*. For the reasons that follow, we recommend that the United States' motion be granted.

### II.   Factual Background and Procedural History.

While the resolution of the United States' motion does not require an extensive review of the facts, some context is necessary. Brobst filed the present case on July 29, 2015, complaining of events that took place approximately twenty

years ago. The gravamen of Brobst's complaint is that the disposition of his personal and business bankruptcies in the mid-1990s had been procured by "fraud upon the court." *Doc. 1* at 2-4, 15-18.

Severe winter storms in late 1993 and early 1994 damaged certain properties owned by Brobst and his wife, Carol. *Doc. 1* at 12. The Brobsts apparently owned one such property through their business, H.C. & S. Enterprises, Inc. ("HCS"). The Brobsts had personally guaranteed the mortgage that covered this commercial property. *Id.* The complaint makes it clear that in the wake of the storm damage, an acrimonious relationship developed between the Brobsts, their insurance company, and their bank. *Id.* at 12-13. The Brobsts and HCS subsequently filed for separate bankruptcies in the Eastern District of Pennsylvania in November of 1995. *Id.* at 14.

In April of 1996, in the midst of the bankruptcy proceedings, the Brobsts' attorneys entered into a stipulation with the bank that held the mortgage on HCS's property. *Doc. 1* at 15. Brobst maintains that he never consented to the agreement and that his counsel falsely represented to the court that he had Brobst's approval to accept it. *Id.* at 18. In fact, Brobst asserts that he was unaware of the existence of any stipulation whatsoever until he received a notice in the mail regarding the purported agreement in May of 1996. *Id.* at 17. As a result, Brobst alleges that the stipulation was fraudulent and that his attorneys and opponents were parties to

a conspiratorial cabal, dedicated to the defeat of Brobst and his interests. *Id.* at 15, 25. The complaint suggests that Brobst then reported his suspicions about the supposed fraud to the judge presiding over the bankruptcies, Judge Twardowski. *Id.* at 25. Brobst further alleges that Judge Twardowski's failure to act perpetrated a "fraud upon the court." *Doc. 1* at 3-4. The bankruptcies were discharged on April 5, 2000. *Id.* at 25.

On September 4, 2015, the United States filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Doc. 9* at 1. Among the arguments advanced by the United States is that Brobst's claim is barred by sovereign immunity, thereby depriving this Court of subject-matter jurisdiction. *Doc. 10* at 2. For the reasons set forth below, we recommend that the United States' motion be granted.

**III. Discussion.**

**A. Motion to Dismiss for Lack of Subject-matter Jurisdiction.**

The United States has moved to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). We must first address the United States' jurisdictional challenge because the lack of subject-matter jurisdiction makes any other defense or objection immaterial. *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v.*

*Pennsylvania*, 188 F.Supp.2d 532, 537 (M.D.Pa. 2002).  In other words, a challenge to a court's subject-matter jurisdiction questions the court's "very power to hear the case."  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

     A 12(b)(1) motion may present either a facial or factual challenge to subject-matter jurisdiction.  *Petruska*, 462 F.3d at 302 n.3.  A facial attack assumes the truthfulness of the plaintiff's allegations but argues that a jurisdictional defect prevents the court from proceeding with the case.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  On the other hand, a factual attack argues that the facts of the case fail to support subject-matter jurisdiction.  *Id.*; *Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).  Furthermore, a factual attack deprives the plaintiff's allegations of any presumption of truth.  *Mortensen*, 549 F.2d at 891.  When considering a factual attack, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*; *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).  Regardless of whether jurisdiction has been challenged facially or factually, it is the plaintiff's burden to show that the court does, in fact, have jurisdiction.  *Carpet Group Int'l*, 227 F.3d at 69; *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B. This Court Lacks Subject-matter Jurisdiction Because the Claim is Barred by Sovereign Immunity

We must first determine whether the United States has presented a facial or factual attack to this Court's subject-matter jurisdiction. "A factual attack requires a factual dispute." *Constitution Party of Pa.,* 757 F.3d at 358. Here, the United States has pressed its challenge prior to filing an answer to Brobst's complaint. Likewise, in neither of its briefs (*docs. 10*, *13*) has the United States disputed even a single factual assertion in the complaint. Therefore, the United States presents a facial attack.

According to the United States, this Court is without authorization to hear the present claim because it is barred by sovereign immunity. *Docs. 9*, *10* at 2-5. The doctrine of sovereign immunity is an artifact from England, where the courts long reasoned that the King could not be sued because he could do no wrong. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 42 (1992) (Stevens, J., dissenting) (citing 1 William Blackstone, Commentaries *246); *see also U.S. v. Lee*, 106 U.S. 196, 205 (1882) (stating that sovereign immunity is derived from the law and practices of England). Although nowhere mentioned in the Constitution, the doctrine's applicability in the United States was well established by the mid-nineteenth century. *See, e.g.*, *Cohens v. State of Virginia*, 19 U.S. 264, 411-12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States."). Therefore, the "basic rule" is "that the

United States cannot be sued at all without the consent of Congress." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).

The Third Circuit has declared that "[w]ithout a waiver of sovereign immunity, a court is without subject-matter jurisdiction." *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012); *accord Clark v. Wells Fargo Bank*, 585 Fed.Appx. 817 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1411 (2015). Moreover, the pronouncements of the Supreme Court leave no doubt that courts lack subject-matter jurisdiction when sovereign immunity has not been waived. *See, e.g.*, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

To clear the high jurisdictional hurdle posed by sovereign immunity, Brobst must show that the United States has clearly surrendered its immunity with respect to his claim. *Clinton Cty. Comm'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997) ("[W]hen the plaintiff seeks to sue the United States. . . , [he] must identify a specific statutory provision that waives the government's sovereign immunity from suit."). Brobst has not met his burden. Nowhere in his brief in opposition (*doc. 12*) does Brobst point to any statute whereby Congress has waived the United States' immunity. The Federal Tort Claims Act (FTCA) is perhaps the closest

waiver within Brobst's reach; yet, even it would not avail Brobst in this case. The FTCA subjects the United States to tort liability "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. But claims "arising out of . . . misrepresentation [or] deceit" are specifically exempted from the FTCA's waiver of immunity. 28 U.S.C. § 2680(h). In the present case, the foundation of Brobst's claim is unquestionably fraud. *Doc. 1* at 3-4. Fraud is defined as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." Black's Law Dictionary (10th ed. 2014). By its very terms, Brobst's fraud upon the court claim falls squarely within the FTCA's exception to tort liability. As a result, Brobst is without his needed waiver of immunity, and this Court is without its needed jurisdiction.

Because this Court lacks subject-matter jurisdiction to hear Brobst's case, we need not consider whether the complaint states a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**IV.     Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the United States' motion to dismiss (*doc*. 9) be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of March, 2016.

                                               *S/Susan E. Schwab*
                                               Susan E. Schwab
                                               United States Magistrate Judge